UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
LINDA PINTRO,                       )
                                    )
            Plaintiff,              )
                                    )
        v.                          )   Civil Action No. 13-0231 (RBW)
                                    )
TOM WHEELER,[1]                     )
Chairman, Federal Communications    )
Commission,                         )
                                    )
            Defendant.              )
_____ )

**MEMORANDUM OPINION**

Plaintiff Linda Pintro brings this action against Tom Wheeler, in his official capacity as Chairman of the plaintiff's employer, the Federal Communications Commission ("FCC"), alleging discrimination based on her race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 (2012), and retaliation for filing an administrative complaint of discrimination, also in violation of Title VII, § 2000e-3. Complaint ("Compl.") ¶¶ 26–39. The FCC has moved to dismiss the complaint and for the following reasons, the Court concludes that it must grant in part and deny in part the FCC's motion.[2]

---

[1] The plaintiff filed suit against Julius Genachowski in his official capacity as Chairman of the Federal Communications Commission. The Court has substituted Tom Wheeler, who succeeded Genachowski as Chairman, pursuant to Federal Rule of Civil Procedure 25(d).

[2] In addition to the plaintiff's complaint, the Court considered the following documents in rendering a decision: (1) the Memorandum in Support of Motion to Dismiss ("Def.'s Mem."), (2) the Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n"), and (3) the Reply in Support of Defendant's Motion to Dismiss ("Def.'s Reply").

# I. BACKGROUND

The plaintiff is an African-American, female attorney of Haitian descent who is employed in the FCC's International Bureau as a Senior Legal Advisor in the Strategic Analysis and Negotiations Division ("Division"). Id. ¶ 6. From 2003 to 2009, the plaintiff was supervised by the Chief of the Division, Kathryn O'Brien, a Caucasian female. Id. ¶¶ 7–8. The plaintiff alleges that during this time period, O'Brien "provided preferential work assignments with management designations within [the Division] to ten[3] Caucasian attorneys, non-competitively, and deliberately excluded Plaintiff from these assignments and other opportunities for career advancement." Id. ¶ 9. Specifically, she asserts that O'Brien promoted (1) Alexander Royblat, a Caucasian male, to the position of Assistant Chief of the Division, effective August 24, 2003; (2) Pam Gerr, a Caucasian female, to the position of Special Counsel, effective August 24, 2003; (3) Julie Barrie, a Caucasian female, to the position of Deputy Chief of the Division, effective October 2003; (4) Jennifer Gilsenan, a Caucasian female, to the position of Deputy Chief of the Division, effective July 16, 2004; (5) Dante Ibarra, a Hispanic male, to the position of Supervisory Electronics Engineer, effective July 22, 2007; (6) Carrie Lee Early, a Caucasian female, to the position of Chief of the Division's Multilateral Negotiations & Industry Analysis Branch, effective February 3, 2008; (7) Chris Murphy, a Caucasian male, to the position of Branch Chief of the Division, effective November 2, 2003; and (8) Robert Tanner, a Caucasian male, to the position of Acting Deputy Division Chief in March 2008. Id. ¶¶ 10–17. The plaintiff asserts that she "was interested in and clearly better qualified" for the promotions given

---

[3] While the plaintiff alleges that O'Brien "provided preferential work assignments with management designations within [the Division] to ten Caucasian attorneys," Compl. ¶ 9, the complaint lists only eight other individuals who were promoted, one of which is Dante Ibarra, a Hispanic male, see id. ¶¶ 10–17.

to Julie Barrie, Jennifer Gilsenan, and Robert Tanner, "but was overlooked for these opportunities in favor of less qualified Caucasian employees." Id. ¶ 18.

In April 2007, O'Brien "detailed Plaintiff to the FCC's Enforcement Bureau to review 'do-not-call complaints,'" which she contends "was essentially a clerical task that did not utilize [her] skills and experience as an attorney and negatively impacted her career growth." Id. ¶ 19. O'Brien subsequently denied the plaintiff's request to be removed from the detail even though "[i]n late 2007 or early 2008, Deputy Division Chief, Linda Dubroof, [a] Caucasian female, was granted a requested reassignment." Id. ¶ 20.

In October 2007, the plaintiff received her 2006 performance evaluation, in which O'Brien rated her "fully successful" in three of four elements and "fully successful" overall, a rating that the plaintiff alleges "failed to consider [her] accomplishments during the relevant time period, and instead was based on arbitrary and irrelevant criteria that O'Brien, when later pressed by Plaintiff, could not justify." Id. ¶ 21. She asserts that the evaluation "precluded [her] from receiving a 'time-off award' and negatively impacted her career advancement." Id.

On April 23, 2008, the plaintiff filed an informal complaint of discrimination based on race and national origin with an Equal Employment Opportunity ("EEO") counselor, id. ¶ 22; Def.'s Mem., Exhibit ("Ex.") A (2008 EEO Complaints) at 2–4, followed by a formal complaint on June 3, 2008, Def.'s Mem., Ex. A (2008 EEO Complaints) at 7–8. The plaintiff alleges that "[a]fter [she] filed her complaint of discrimination, O'Brien continued to retaliate against [her] by removing her job duties, relegating her to the least favorable job assignments, and giving her few if any awards," and that O'Brien "refused to provide [her] with performance evaluations." Compl. ¶¶ 23–24. When the plaintiff received a performance evaluation in March 2010, it "noted that the four critical elements of [her] performance plan were not applicable, and downgraded her rating in all elements from her previous rating." Id. ¶ 24.

The plaintiff subsequently commenced this litigation alleging discrimination based on her race and national origin, and retaliation for her complaint of discrimination. Id. ¶¶ 32–39. The FCC now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56.[4]

## II. STANDARDS OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion tests whether the complaint "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff receives the "benefit of all inferences that can be derived from the facts alleged," Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citation and internal quotation marks omitted), but raising a "sheer possibility that a defendant has acted unlawfully" fails to satisfy the facial plausibility requirement, Iqbal, 556 U.S. at 678. Rather, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in the complaint, conclusory allegations "are not entitled to the assumption of truth." Id. at 679.

### B. Federal Rule of Civil Procedure 56

A motion for summary judgment must be granted "if the movant shows that there is no

---

[4] While not captioned as a motion for summary judgment in the alternative, the FCC requested that the Court convert its motion to one for summary judgment on particular issues if the Court found it necessary to do so because of the FCC's reliance on matters outside of the pleadings. See Def.'s Mem. at 9–10. As discussed below, the Court deems it necessary to convert the FCC's motion to one for summary judgment.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," based upon the depositions, affidavits, and other factual materials in the record. Fed. R. Civ. P. 56(a), (c). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). And "a dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006) (quoting Anderson, 477 U.S. at 247). The moving party bears the initial burden of showing the absence of a disputed material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. "Although summary judgment is not the occasion for the court to weigh credibility or evidence, summary judgment is appropriate 'if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011) (citations omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a [reasonable] jury to return a verdict for that party." Anderson, 477 U.S. at 249. In making this assessment, "[t]he evidence is to be viewed in the light most favorable to the nonmoving party and the court must draw all reasonable inferences in favor of the nonmoving party." Talavera, 638 F.3d at 308 (citing Anderson, 477 U.S. at 255).

### III. ANALYSIS

As an initial matter, the FCC attached various exhibits to its motion to dismiss in support of its arguments, including the plaintiff's April 23, 2008 informal EEO complaint and June 3, 2008 formal EEO complaint, Def.'s Mem., Ex. A (2008 EEO Complaints) at 2–4, 7–8, and an excerpt of the transcript of a deposition taken of the plaintiff during the Equal Employment

5

Opportunity Commission ("EEOC") proceeding concerning the plaintiff's discrimination claim, Def.'s Mem., Ex. D (Deposition of Linda Pintro ("Pintro Depo.")). The plaintiff also attached exhibits of her own to her opposition, including a May 10, 2010 complaint of discrimination, Pl.'s Opp'n, Ex. 2, a March 13, 2008 memorandum entitled "[International Bureau] Staffing Issues," Pl.'s Opp'n, Ex. 1 at 4–9, and a portion of the transcript of the EEOC hearing, see Pl.'s Opp'n, Ex. 3. In ruling on a Rule 12(b)(6) motion, however, the Court may only consider "the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice.'" Abhe & Svoboda, Inc. v. Chao, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (citation omitted). While the FCC argues that the Court need not convert its motion to one for summary judgment because the Court may take judicial notice of record documents in the plaintiff's EEOC proceedings, Def.'s Mem. at 4, 7, some of the exhibits submitted to the Court, such as the plaintiff's deposition testimony, are clearly outside the scope of the narrow exceptions to the general rule that a court is limited to the complaint and any documents attached to it in resolving a motion under Rule 12(b)(6). Thus, even if the FCC is correct about the Court's ability to consider the record documents in the plaintiff's EEOC proceedings without converting its Rule 12(b)(6) motion, the Court must nevertheless convert the FCC's motion to one for summary judgment if it is to determine whether the plaintiff has exhausted her administrative remedies at this stage of the litigation.

Federal Rule of Civil Procedure 12 provides that when a court converts a motion to dismiss pursuant to Rule 12(b)(6) to one for summary judgment under Rule 56, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When presented with a motion for summary judgment before discovery has been conducted, a district court must "permit[] [the nonmoving party] to either conduct discovery or come forward with additional evidence." Colbert v. Potter, 471 F.3d 158, 168 (D.C.

6

Cir. 2006) (second alteration in original) (citation and internal quotation marks omitted). A court may then convert a motion to dismiss to one for summary judgment if it "is satisfied that the parties are not taken by surprise or deprived of a reasonable opportunity to contest facts averred outside the pleadings and the issues involved are discrete and dispositive." Hamilton v. Geithner (Hamilton I), 743 F. Supp. 2d 1, 8 (D.D.C. 2010) (Walton, J.) (citation and internal quotation marks omitted), aff'd, 666 F.3d 1344 (D.C. Cir. 2012).

The Court is satisfied that the plaintiff had adequate notice that the FCC's motion may be converted to one for summary judgment and has been given a reasonable opportunity to present evidence to rebut the FCC's arguments regarding exhaustion. The FCC's motion repeatedly acknowledges its reliance on materials outside of the pleadings and recognizes that its presentation of exhibits may result in the Court converting its motion to one for summary judgment. See Def.'s Mem. at 4, 7, 9–10. The plaintiff responded in kind by attaching several exhibits countering the FCC's evidence, a response which demonstrates that she had adequate notice and was given an opportunity to present relevant evidence as required by Rule 12(d). See Colbert, 471 F.3d at 168 (holding that plaintiff had adequate notice and sufficient opportunity to present evidence when defendant's dismissal motion alternatively requested summary judgment and the plaintiff attached exhibits to her opposition to motion to dismiss). Moreover, the plaintiff did not request discovery prior to the Court's resolution of this motion, and indicated no opposition to the FCC's suggestion that the Court convert its motion to one for summary judgment if it found it necessary to do so in order to rule on the exhaustion issue. The Court therefore finds it appropriate to convert the FCC's motion to dismiss to one for summary

judgment with respect to its arguments regarding the plaintiff's failure to exhaust her administrative remedies.[5]

## A. The Plaintiff's Race and National Origin Discrimination Claims

Before bringing a claim for discrimination under Title VII, an employee must "timely exhaust [her] administrative remedies." Harris v. Gonzales, 488 F.3d 442, 443 (D.C. Cir. 2007). To do so, an employee must "'initiate contact with a[n EEO] Counselor within [forty-five] days of the date of the matter alleged to be discriminatory.'" Id. (quoting 29 C.F.R. § 1614.105(a)(1) (2013)). Importantly, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" and "starts a new clock for filing charges alleging that act." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113–14 (2002). Thus "[t]o be actionable, a discrete act—an event that 'takes place at a particular point in time'—must occur within the filing period," Dickens v. Dep't of Consumer & Regulatory Affairs, 298 F. App'x 2, 3 (D.C. Cir. 2008) (quoting Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618 (2007), superseded by statute Pub. L. No. 111-2, 123 Stat. 5 (2009)), and "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," Morgan, 536 U.S. at 113.

---

[5] In Kim v. United States, 632 F.3d 713 (D.C. Cir. 2011), the Circuit commented that "[i]n converting [a] motion, district courts must provide the parties with notice and an opportunity to present evidence in support of their respective positions." 632 F.3d at 719. The district court in that case had dismissed the pro se litigants' complaint pursuant to Rule 12(b)(6) because it found that the plaintiffs' failure to exhaust their administrative remedies appeared on the face of the complaint. Id. The Circuit disagreed that the failure to exhaust was apparent from the pleadings, and indicated that on remand the district court could consider extrapleading materials that had been submitted to it with the motion to dismiss so long as it provided prior notice to the pro se plaintiffs of its intent to convert the motion to one for summary judgment. Id. at 719–20. Because Kim involved pro se litigants who are already provided special notice regarding their obligations when an opposing party files a motion for summary judgment, see Neal v. Kelly, 963 F.2d 453, 455–57 (D.C. Cir. 1992), the Court does not interpret Kim's requirement that a court provide prior notice of conversion to apply here, where the plaintiff is represented by counsel and has responded to the submission of exhibits with evidence of her own. The Court also notes that a contrary interpretation of Kim would conflict with other case authority in this Circuit. See, e.g., Colbert, 471 F.3d at 168.

The FCC argues that the plaintiff's race and national origin discrimination claims must be dismissed because the plaintiff failed to initiate contact with an EEO counselor within forty-five days of the FCC's allegedly discriminatory actions. Def.'s Mem. at 8–10. The plaintiff first contacted an EEO counselor on April 23, 2008, regarding her claims of race and national origin discrimination. See Def.'s Mem., Ex. A (2008 EEO Complaints) at 2; see also Compl. ¶ 22. In accordance with Morgan, any "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" that occurred more than forty-five days before April 23, 2008, are time-barred and cannot form the basis of the plaintiff's claim of discrimination before this Court. Morgan, 536 U.S. at 114. With respect to the promotion of Robert Tanner, the parties have offered conflicting evidence regarding when Tanner was designated as Acting Deputy Division Chief and when the plaintiff learned that he had assumed that position. Compare Def.'s Mem., Ex. D (Pintro Depo.) at 26:7–13 (testifying that Tanner had been in the position "since February"), and id. at 31:3–7 (testifying that she was admitted to the hospital "February 8th of 2008, right around the time this whole Robert Tanner thing came to my knowledge"), with Pl.'s Opp'n, Ex. 3 (Testimony of Kathryn O'Brien at EEOC Hearing) at 191:2–10 (testifying that she announced the designation of Tanner as Acting Deputy Division Chief at a staff meeting in February or March), and Pl.'s Opp'n, Ex. 1 (March 13, 2008 Memorandum) at 8 (stating that "[o]n an interim basis, we are proposing that Robert Tanner serve as an Acting Deputy Division Chief"). From this record a genuine factual dispute exists regarding the timing of Tanner's designation as Acting Deputy Division Chief and therefore the plaintiff's knowledge of when Tanner's designation occurred, and thus the Court is unable to determine whether the plaintiff's April 23, 2008 complaint regarding his promotion is timely. The FCC is therefore not entitled to summary judgment on the plaintiff's non-selection for the Acting Deputy Division Chief position.

With respect to the remaining acts forming the basis of the plaintiff's race and national origin discrimination claims, however, the Court finds that the plaintiff did not timely exhaust her administrative remedies. The promotions of Alexander Royblat, Pam Gerr, Julie Barrie, Jennifer Gilsenan, Dante Ibarra, Carrie Lee Early, and Chris Murphy were all effective more than forty-five days before the plaintiff filed her EEO complaint on April 23, 2008. See Compl. ¶¶ 10–16 (alleging that Royblat, Gerr, Barrie, and Murphy were promoted in 2003, Gilsenan was promoted in 2004, Ibarra was promoted in 2007, and Early was promoted effective February 3, 2008). The plaintiff's challenges to her April 2007 detail and the performance evaluation she received in October 2007 are also time-barred. See, e.g., Hamilton I, 743 F. Supp. 2d at 10 & n.3 (considering detail a discrete act); Wada v. Tomlinson, 517 F. Supp. 2d 148, 184 (D.D.C. 2007) (considering performance evaluation a discrete act), aff'd, 296 F. App'x 77 (D.C. Cir. 2008).

The plaintiff attempts to resist this conclusion by arguing that Morgan is inapplicable to her discrimination claim because it is a "pattern or practice" claim. See Pl.'s Opp'n at 10–12. To be sure, the Supreme Court expressly noted that it "ha[d] no occasion [in Morgan] to consider the timely filing question with respect to 'pattern-or-practice' claims brought by private litigants as none [were] at issue" in that case. Morgan, 536 U.S. at 115 n.9. But since the plaintiff's discrimination claim is not a "pattern or practice" claim, this exception is of no moment. In a "pattern or practice" case, "'discrimination [is] the company's standard operating procedure— the regular rather than the unusual practice.'" Schuler v. PricewaterhouseCoopers, LLP, 514 F.3d 1365, 1370 (D.C. Cir. 2008) (quoting Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 336 (1977)); Haynie v. Veneman, 272 F. Supp. 2d 10, 17 n.4 (D.D.C. 2003) (defining "pattern or practice" claim as referenced in Morgan to refer "only to allegations of systemic discrimination against a protected class of individuals where the alleged acts reflect an intent to discriminate against all persons in the class"). For example, in Schuler, the plaintiff challenged

the defendant's mandatory retirement policy for partners over sixty and its practice of rarely promoting employees over the age of forty-five, resulting in the defendant's failure to promote him despite his qualifications.  Schuler, 514 F.3d at 1368, 1370–71.  Indeed, "pattern-or-practice claims are generally brought by a class rather than an individual plaintiff."  Hayes v. Chao, 592 F. Supp. 2d 51, 56 (D.D.C. 2008).

Here, the plaintiff's complaint contains allegations of multiple allegedly discriminatory acts against her, but no such allegations of a "pattern or practice" of systemic discrimination against a class of which she is a member.  See Compl. ¶ 30 (alleging that the FCC discriminated against the plaintiff "when she was denied opportunities for promotions and was precluded from assignments of work projects that would have enabled her to qualify for such promotions, when the Agency refused to promote her to the Acting Deputy Division Chief position, and when she was issued negative or no performance evaluations with few if any awards").  Even though the plaintiff's claim is based on a "pattern" in the sense that the plaintiff alleges several discriminatory acts over a period of time, because "the core of [the] plaintiff's challenge is [the] defendant's individualized discrimination against her," it is not the type of "pattern or practice" claim referenced by the Supreme Court in Morgan, and thus falls within the ambit of Morgan's general rule regarding the timely exhaustion of distinct claims.  Haynie, 272 F. Supp. 2d at 17 n.4 (emphasis added).  And while the plaintiff does not argue that her claim falls within Morgan's exception for hostile environment claims, the Court notes that the plaintiff's complaint and EEO complaints do not plead or even hint at the existence of a hostile environment claim. See Baird v. Gotbaum, 662 F.3d 1246, 1251 (D.C. Cir. 2011) (noting that the exception for hostile environment claims articulated in Morgan "is not . . . an open sesame to recovery for time-barred violations" because incidents "can qualify as 'part of the same actionable hostile

11

environment claim' only if they are adequately linked into a coherent hostile environment claim").

Finally, although the plaintiff does not argue that any equitable exception should apply to excuse her failure to timely exhaust her administrative remedies, the Court does not discern any basis to apply any such exception from the complaint and the parties' submissions. Accordingly, the Court grants summary judgment to the FCC with respect to the challenged employment actions underlying the plaintiff's race and national origin discrimination claims with the exception of the promotion of Robert Tanner.[6]

## B. The Plaintiff's Retaliation Claim

The FCC argues that the plaintiff's retaliation claim must be dismissed because her June 3, 2008 EEO complaint does not allege retaliation and the plaintiff did not subsequently amend her EEO complaint to include it, and so she has failed to exhaust her administrative remedies as to that claim. Def.'s Mem. at 10. The plaintiff, in turn, contends that she did exhaust her administrative remedies with respect to this claim, relying on a May 10, 2010 EEO complaint alleging retaliation which she attached to her opposition. Pl.'s Opp'n at 12; Pl.'s Opp'n, Ex. 2 (May 10, 2010 Complaint).

The Court agrees with the FCC that the plaintiff failed to exhaust her administrative remedies as to her retaliation claim. The May 10, 2010 complaint which the plaintiff attached to

---

[6] It is unclear from the face of the plaintiff's complaint whether her allegations that O'Brien "remov[ed] her job duties, relegate[d] her to the least favorable job assignments, and [gave] her few if any awards" and "refused to provide [her] with performance evaluations from 2008 until March 2010, when she received an evaluation that "noted that the four critical elements of [her] performance plan were not applicable, and downgraded her rating in all elements from her previous rating," Compl. ¶¶ 23–24, are included in her race and national origin discrimination claims as well as her retaliation claim, see id. ¶ 30 (listing receipt of "negative or no performance evaluations with few if any awards" among the bases of her race and national origin discrimination claims). As described below, however, the Court finds that the plaintiff was required to timely exhaust these allegations and failed to do so, and so to the extent they are included in her discrimination claim, the Court grants summary judgment to the FCC on these allegations as well.

12

her opposition is an informal complaint of discrimination. See Pl.'s Opp'n, Ex. 2 (May 10, 2010 Complaint) at 2. But in order to exhaust one's administrative remedies, an employee must file a formal complaint of discrimination, Hamilton v. Geithner (Hamilton II), 666 F.3d 1344, 1350 (D.C. Cir. 2012) (citing 29 C.F.R. § 1614.407), and so the plaintiff's May 10 complaint is insufficient to establish exhaustion as to the retaliation claim.

Nor can the plaintiff rely on her June 3, 2008 formal EEO complaint to proceed with a claim based on subsequent related acts of retaliation. See Pl.'s Opp'n at 12. As this Court has previously held, Morgan precludes a plaintiff from relying on an earlier charge of discrimination to establish exhaustion of a retaliation claim that she argues was "sufficiently related" to the earlier charge, and requires a plaintiff to instead separately exhaust her claim of retaliation.[7] Adams v. Mineta, No. 04-856 (RBW), 2006 WL 367895, at *3–5 (D.D.C. Feb. 16, 2006). And here, even if Morgan did not foreclose the plaintiff's argument, the Court is not convinced that the plaintiff's retaliation claim is sufficiently related to her discrimination claim to permit her to rely on her June 3, 2008 complaint for exhaustion purposes. In order for a charge to be considered "reasonably related" to the filed complaint, it must "[a]t a minimum . . . arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination" so that the agency has "an opportunity to resolve [the] claim administratively before [the employee] file[s] her complaint in district court." Payne v. Salazar, 619 F.3d 56, 65 (D.C. Cir. 2010) (citations and internal quotation marks omitted). Here, the investigation following the plaintiff's EEO complaint concluded on October 13, 2008, Def.'s Reply, Ex. A

---

[7] The effect of Morgan on the preexisting practice of permitting a plaintiff to proceed with retaliation claims that are sufficiently related to a properly exhausted claim remains an open question in this Circuit. See Payne v. Salazar, 619 F.3d 56, 65 (D.C. Cir. 2010) (declining to address the issue). The position adopted by the undersigned member of this Court is the majority position in this district. See Rashad v. Washington Metro. Area Transit Auth., 945 F. Supp. 2d 152, 166 (D.D.C. 2013) (collecting cases).

(Declaration of Linda Miller) ¶ 5, and thus could not have possibly addressed the plaintiff's failure to receive timely performance evaluations for 2008 and 2009 and the ratings O'Brien eventually gave the plaintiff when she did receive her 2009 evaluation, see Payne, 619 F.3d at 65.

As with the plaintiff's race and national origin discrimination claims, the plaintiff does not argue that any equitable exception applies here, and the Court finds none to excuse the plaintiff's failure to timely exhaust her administrative remedies. Accordingly, the FCC is entitled to summary judgment on the plaintiff's retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny in part the FCC's motion to dismiss, or in the alternative, for summary judgment. The Court grants summary judgment to the FCC on the plaintiff's retaliation claim in its entirety. With respect to her race and national origin discrimination claims, the Court denies summary judgment to the FCC on the plaintiff's race and national origin discrimination claims based on the promotion of Robert Tanner in 2008, but grants summary judgment to the FCC on all other discriminatory acts alleged by the plaintiff as the basis for these claims.

**SO ORDERED** this 2nd day of April, 2014.[8]

REGGIE B. WALTON
United States District Judge

---

[8] An Order consistent with this Memorandum Opinion shall be issued contemporaneously.