UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LINDA PINTRO, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Civil Action No. 13-231 (RBW) |
| AJIT PAI, Chairman of the Federal Communications Commission, | ) ) ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION

The plaintiff, an African-American female of Haitian descent, brings this civil action against the defendant, Ajit Pai, in his official capacity as the Chairman of the Federal Communications Commission ("FCC"), for alleged discrimination based on race and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-2 to -17 (2012). See Complaint ("Compl.") ¶¶ 4, 30. Currently pending before the Court is the Defendant's Motion for Summary Judgment ("Def.'s Mot."). Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must deny the defendant's motion for summary judgment.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendant's Statement of Undisputed Material Facts ("Def.'s Facts"); (2) the defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."); (3) the Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"); (4) the plaintiff's Statement of Disputed Material Facts in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Facts"); (5) the defendant's Reply Memorandum in Support of Defendant's Motion for Summary Judgment ("Def.'s Reply"); (6) the Plaintiff's Response to the Court's June 12, 2019 Order ("Pl.'s Resp."); and (7) the Defendant's Opposition to Plaintiff's Response to Court's Order ("Def.'s Resp.").

I.     BACKGROUND

A.     Factual Background

The plaintiff is an African-American attorney of Haitian descent who has been an FCC employee since 1996. See Pl.'s Resp., Exhibit ("Ex.") A (Transcript of EEOC Proceedings on May 11, 2012) 57:14–16. During the time period relevant to this litigation, the plaintiff was a Senior Legal Advisor in the Strategic Analysis and Negotiations Division (the "Division") of the FCC's International Bureau. See id., Ex. A (Transcript of EEOC Proceedings on May 11, 2012) 57:4–9; 57:18–21. From approximately 2003 to 2009, she was supervised by the Chief of the Division, Kathryn O'Brien, a Caucasian female. See Def.'s Facts ¶ 3; Pl.'s Resp., Ex. A (Transcript of EEOC Proceedings on May 11, 2012) 58:8–13; 73:16–21.

In early 2008, one of O'Brien's two Deputy Division Chief positions became vacant. See Pl.'s Resp., Ex. A (Transcript of EEOC Proceedings on May 11, 2012) 182:8–12. O'Brien did not consider the plaintiff for the position, see id., Ex. A (Transcript of EEOC Proceedings on May 11, 2012) 193:17–194:7, but instead asked Robert Tanner, a white male who was an attorney-advisor for the Division, to serve as an Acting Deputy Division Chief on an interim basis, see Def.'s Facts ¶ 7; Pl.'s Resp., Ex. A (Transcript of EEOC Proceedings on May 11, 2012) 189:8–22; id., Ex. A (Transcript of EEOC Proceedings on May 17, 2012) 530:25–531:7.

The plaintiff subsequently commenced this litigation, alleging that the defendant discriminated against her based on her race and national origin, and retaliated against her after she filed a complaint of discrimination with the Equal Employment Opportunity Commission. See Compl. ¶¶ 22–24.

B.   **Procedural Background**

On May 24, 2013, the defendant filed a motion to dismiss this case, arguing that the plaintiff failed to timely exhaust her administrative remedies as to her claims. See Motion to Dismiss at 1. Because the defendant, in his motion, relied on matters outside of the pleadings, see Memorandum in Support of Motion to Dismiss at 9–10, the Court converted the defendant's motion to dismiss into one for summary judgment, see Pintro v. Wheeler (Pintro I), 35 F. Supp. 3d 47, 51–52 (D.D.C. 2014), and entered summary judgment in favor of the defendant with respect to all of the plaintiff's claims, with the exception of the plaintiff's race and national origin discrimination claims that were based on the plaintiff's 2008 non-selection for the Acting Deputy Division Chief position that was awarded to Robert Tanner, see id. at 56. The Court concluded that the defendant was "not entitled to summary judgment on the plaintiff's non-selection for the Acting Deputy Division Chief position" based on his argument that the plaintiff untimely challenged her non-selection because "a genuine factual dispute exist[ed] regarding the timing of Tanner's designation as Acting Deputy Division Chief and therefore the plaintiff's knowledge of when Tanner's designation occurred." Id. at 53.

After the parties' attempt to mediate this case was unsuccessful, see Min. Order (Jan. 19, 2016), and after discovery closed on September 16, 2016, see Order at 1 (Mar. 18, 2016), ECF No. 29, the defendant filed his second motion for summary judgment, see generally Defendant's Motion for Summary Judgment, which the Court denied in Pinto v. Pai (Pintro II), 273 F. Supp. 3d 264, 274 (D.D.C. 2017). In Pintro II, the Court found that "a reasonable jury could conclude that the [defendant's] explanations for not selecting the plaintiff for the Acting Deputy Division Chief position were pretextual and infer that the real reason for the plaintiff's non-selection was discrimination." Pintro II, 273 F. Supp. 3d at 274.

3

Once again, the Court referred this case for mediation at the parties' request, see Minute Order (Aug. 21, 2017), and after further negotiations between the parties were again unsuccessful, see Joint Status Report at 1 (Jan. 24, 2018), the parties "request[ed] that the Court schedule a pretrial conference . . . and [ ] a trial date," id. On May 24, 2018, the parties appeared before the Court for the pretrial conference, see Minute Entry (May 24, 2018), during which the defendant for the first time raised the argument that the plaintiff's non-selection for the Acting Deputy Division Chief position was not an adverse action. In response to the defendant's arguments, the Court concluded that "whether the plaintiff suffered an adverse action is a question of fact reserved for the jury," Order at 1 (May 24, 2018), ECF No. 62 (citing Niskey v. Kelly, 859 F.3d 1, 8 (D.C. Cir. 2017)), and rescheduled the continuation of the pretrial conference to a later date, see id. at 3. At the rescheduled pretrial conference on June 14, 2018, the Court affirmed its ruling that "whether the plaintiff suffered an adverse action is a question of fact reserved for the jury," Order at 1 (June 14, 2018), ECF No. 69, but reopened discovery regarding the selection process for the 2010 Deputy Division Chief position, see id. at 2.

On February 13, 2019, the defendant requested leave to file another motion for summary judgment, see Defendant's Motion for Leave to File Motion for Summary Judgment at 1, asserting that the "newly gleaned discovery has direct bearing on the issue [of] whether [the] [p]laintiff suffered an adverse action," and that the defendant "had not addressed th[at] issue in" his previous motions because he "did not have an evidentiary record dispositive of th[e] issue," id. at 2. On April 9, 2019, the Court granted the defendant's motion for leave to file another motion for summary judgment, see Order at 1 (Apr. 9, 2019), ECF No. 100, and the motion was filed on the docket thereafter, see generally Def.'s Mot. The defendant's third motion for summary judgment is the subject of this Memorandum Opinion.

4

## II.     STANDARD OF REVIEW

A court can grant a Rule 56 motion for summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." Id. The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Accordingly, the non-moving party "must set forth specific facts showing that there . . . [are] genuine issue[s] for trial." Anderson, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position . . . [is] insufficient" to withstand a motion for summary judgment; rather, "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

### III. LEGAL ANALYSIS

Under Title VII, it is an "unlawful employment practice for an employer[] . . . to discriminate against any [employee] with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To state a prima facie case of discrimination under Title VII, a "plaintiff must establish that (1) [s]he is a member of a protected class, (2) [s]he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that [her] employer took the action because of [her] membership in the protected class)." Forkkio v. Powell, 306 F.3d 1127, 1130 (D.C. Cir. 2002) (citing Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999)). "An adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Douglas v. Donovan, 559 F.3d 549, 552 (D.C. Cir. 2009) (quoting Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003)); see Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). A plaintiff "suffers an adverse employment action if [s]he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." Forkkio, 306 F.3d at 1131 (citing Brown, 199 F.3d at 457); see Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002) ("An 'employment decision does not rise to the level of an actionable adverse action . . . unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage."). "[E]mployment actions that do not obviously cause a significant change in employment status[] . . . require the plaintiff to 'go the further step' of

demonstrating how the decision caused objectively tangible harm." Ames v. Nielson, 286 F. Supp. 3d 70, 83 (D.D.C. 2017) (quoting Douglas, 559 F.3d at 556).

As a general matter, a "temporary designation is not one of the terms, conditions, or privileges of employment contemplated by Title VII." Stewart v. Evans, 275 F.3d at 1135; cf. Taylor v. Fed. Deposit Ins. Corp., 132 F.3d 753, 764 (D.C. Cir. 1997) ("Courts applying Title VII have consistently focused on 'ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating . . . [and not] interlocutory . . . decisions having no immediate effect upon employment conditions.'" (first and second alteration in original) (quoting Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981))). However, there is no "per se rule [that] exists such that denial of a temporary position can never be an adverse action." Kangethe v. District of Columbia, 206 F. Supp. 3d 661, 670 (D.D.C. 2016). Therefore, in order for a "[n]on-selection for a temporary position [to] constitute an adverse action," a plaintiff must prove that "the position would have provided some tangible and objective benefit." Id. And, "generalized and speculative assertions of benefits that may accrue from a temporary post are insufficient." Id. (citing Maramark v. Spellings, No. 06-5099, 2007 WL 2935411, at *1 (D.C. Cir. Sept. 20, 2007)).

Here, the plaintiff claims that she suffered an adverse employment action because the defendant's failure to select her for the Acting Deputy Division Chief position denied her "an opportunity to exercise supervisory responsibilities" and impacted "her ability to obtain additional promotions in the future." Pl.'s Opp'n at 7–8. The defendant argues these "generalized and speculative assertions of benefits that may accrue from a temporary post are

7

insufficient to support an adverse action,"[2] Def.'s Mem. at 10 (quoting Kangethe, 206 F. Supp. 3d at 670), and because "there is no evidence of tangible harm," id. at 8, and because "there is no genuine issue of material fact still in dispute," id. at 7, he "is entitled to summary judgment as a matter of law," id. However, the Court does not agree with the defendant and finds his challenges to the sufficiency of the plaintiff's alleged harms unavailing. This is because the plaintiff has raised a genuine issue of material fact regarding whether she suffered objectively tangible harm as a result of the defendant's failure to select her for the Acting Deputy Division Chief position. Accordingly, the Court, consistent with its prior decisions on the adverse action issue, see Order at 1 (June 14, 2018), ECF No. 69; Order at 1 (May 24, 2018), ECF No. 62, concludes that whether the plaintiff suffered an adverse action is a question of fact reserved for the jury, and must again deny the defendant's motion for summary judgment.

### A. Denial of Opportunity to Exercise Supervisory Authority

Courts have held that the denial of a temporary detail to a position with supervisory authority can constitute an adverse action. See Browne v. Donovan, 12 F. Supp. 3d 145, 154 (D.D.C. 2014) ("Furthermore, the detail here would have offered [the] [p]laintiff the opportunity

---

[2] The plaintiff disputes the defendant's characterization of the Acting Deputy Division Chief position as temporary and instead asserts that she was denied a promotion because "the Deputy Division Chief title given to [ ] Tanner in 2008 was 'Acting' in name only." Pl.'s Opp'n at 12. Although the Court acknowledges that the defendant has presented evidence that Tanner may have been "asked to serve as the Acting, and not the permanent, Deputy Division Chief," Def.'s Reply at 6 (quoting Def.'s Mot., Ex. F (Interview of Kathryn O'Brien (Sept. 8, 2008)) 45:23–46:21), a genuine factual dispute exists regarding whether Tanner's position as the Acting Deputy Division Chief was intended to be permanent or temporary. The plaintiff has presented evidence from which a reasonable juror could conclude that "O'Brien non-competitively selected [ ] Tanner for the Deputy Chief position in an acting capacity in name only so as to funnel him into the permanent position," Pl.'s Opp'n at 12; see Pl.'s Resp., Ex. A (Transcript of EEOC Proceedings on May 11, 2012) 33:13–19 (John Giusti, former Deputy Division Chief, testifying that "[i]t is possible" that O'Brien selected him non-competitively for the Acting Deputy Division Chief position); id., Ex. A (Transcript of EEOC Proceedings on May 11, 2012) 208:3–12 (O'Brien testifying that she non-competitively hired an employee for the Deputy Division Chief position); id., Ex. A (Transcript of EEOC Proceedings on May 11, 2012) 217:22–219:11 (O'Brien testifying that she did not believe posting any of the Deputy Division Chief positions), and that her denial of the position constituted an adverse employment action, see Douglas, 559 F.3d at 552 (stating that "[a]n adverse employment action is a significant change in employment status, such as . . . failing to promote" (emphasis added)). Therefore, summary judgment is inappropriate on this basis as well.

8

to serve, for approximately two months, in the position of her first-line supervisor."); see Elam v. D.C. Fire & EMS Dep't, Civ. Action No. 03-1407 (GK), 2005 WL 1903557, at *6 (D.D.C. July 19, 2005) ("[E]ven if the promotion was only temporary, it would have provided [the] [p]laintiff [with] increased supervisory duties."); cf. Stewart v. Ashcroft, 352 F.3d 422, 426–27 (D.C. Cir. 2003) (concluding that a reasonable jury could find an adverse action based on an employer's failure to transfer the plaintiff to a position with the same pay and benefits but involving greater supervisory duties and prospects for advancement). But see Bruder v. Chu, 953 F. Supp. 2d 234, 240 (D.D.C. 2013) ("[D]enial of an acting position—without showing some further harm—does not by itself qualify as an adverse employment action. This includes situations where the plaintiff is repeatedly passed over for a temporary supervisory role." (quoting Glenn v. Williams, Civ. Action No. 98-1278, 2006 WL 401816, at *17 (D.D.C. Feb. 21, 2006))).

Here, the defendant argues that the "[p]laintiff did not miss out on any concrete benefits from her non-selection." Def.'s Mem. at 9. Specifically, he asserts that the plaintiff would not have received an increase in pay because she was already at "the top of the General Schedule pay scale and the maximum compensation level for her and the Deputy Division Chief positions," her "duties did not change . . . [because] [p]rior to the non-selection, she served as a management official, . . . and she remained in that position after her non-selection," id., and "the temporary position involved non-supervisory duties," id. at 13. However, "the absence of a change in pay or benefits is not determinative on the issue of adverse employment action." Browne, 12 F. Supp. 3d at 154 (citing Pardo-Kronemann v. Donovan, 601 F.3d 599, 607 (D.C. Cir. 2010)). And, contrary to the defendant's assertion that "the temporary position involved non-supervisory duties," Def.'s Mem. at 13, there is no indication that the position involved only non-supervisory duties as the plaintiff has identified evidence in the record suggesting that Tanner, while serving

9

as the Acting Deputy Division Chief, performed duties that involved managing and supervising employees, see Pl.'s Resp., Ex. A (Transcript of EEOC Proceedings on May 11, 2012) 192:14–16 (O'Brien testifying that "Tanner in fact performed duties as Acting Deputy Division Chief"); id., Ex. A (Transcript of EEOC Proceedings on May 17, 2012) 408:6–10 (Patrick Sullivan, Chief of Staff for the defendant's International Bureau, testifying that the Deputy Division Chief position is a supervisory position); id., Ex. A (Transcript of EEOC Proceedings on May 17, 2012) 542:21–544:13 (Tanner testifying that he "had a role in working with everybody in the two branches to ensure we were . . . performing the duties that were expected of us. . . . [I]t was essentially helping those two branches get their work done and helping them to interact up the management chain."); id., Ex. A (Transcript of EEOC Proceedings on May 17, 2012) 550:14–19 (Tanner testifying that O'Brien, at a staff meeting, announced that Tanner "would be supervising the two branches"); id., Ex. A (Transcript of EEOC Proceedings on May 17, 2012) 563:9–12 (Tanner testifying that, "at the request of the division manager, [he] took on primarily the responsibilities of managing th[e] two branches"); id., Ex. A (Transcript of EEOC Proceedings on May 17, 2012) 569:10–14 (Tanner testifying that he designated himself on emails as the Deputy Division Chief "because [he] felt it was useful in getting the job done, both in managing down and managing up"); id., Ex. A (Transcript of EEOC Proceedings on May 17, 2012) 572:5–9 (Tanner agreeing that, as the Acting Deputy Division Chief, he "essentially perform[ed] duties that the Deputy Division Chief would perform"). Therefore, because the plaintiff has provided evidence that the Acting Deputy Division Chief position would have provided her new supervisory duties not available in her current position, the Court cannot grant the defendant's motion for summary judgment.

**B.     Denial of Opportunity to Be Better Positioned for Future Promotions**

This Circuit and other members of this Court have found that a denial of a temporary position that might have opened up opportunities for advancement qualifies as an adverse action. See, e.g., Wiley v. Glassman, 511 F.3d 151, 157 (D.C. Cir. 2007) (concluding that the failure to rotate the plaintiff into an acting manager position "surely qualifie[d] as an adverse employment action" because the employee's manager "testified that he did not support [the employee's] request for a [ ] promotion in part because she did not have any 'supervisory duties' in her current job"); Browne, 12 F. Supp. 3d at 155 (citing "evidence that not only [the] [p]laintiff but other employees . . . viewed the detail as an opportunity to improve the chances of being selected for the Associate General Counsel position permanently"); Maramark v. Spellings, Civ. Action No. 01-2206, 2006 WL 276979, at *15 (D.D.C. Feb. 3, 2006), aff'd, No. 06-5099, 2007 WL 2935411 (D.C. Cir. Sept. 20, 2007) ("[A] [p]laintiff can establish that the denial of [a] [ ] detail was an adverse employment action [ ] by proving that either the detail itself or the skills acquired pursuant to that detail could have led to a promotion or permanent position[.]"); cf. Bowie v. Ashcroft, 283 F. Supp. 2d 25, 32–33 (D.D.C. 2003) (finding that the plaintiff could satisfy "the standard for an adverse action for failure to assign her to a lateral transfer because she ha[d] alleged, and [the] defendant concede[d], that this failure could affect her future promotional opportunities"). But see Gilliard v. Gruenberg, 302 F. Supp. 3d 257, 265, 277 (D.D.C. 2018) (concluding that "[b]ecause the denial of a temporary detail cannot constitute an adverse employment action, a claim rooted in the purported denial of an opportunity to compete for the position must also fail," even though the detail at issue would have given the plaintiff the opportunity to serve in a supervisory position and, according to the plaintiff, "an advantage in competing for the soon-to-be posted permanent position"); Brookens v. Solis, 616 F. Supp. 2d

11

81, 91 (D.D.C. 2009) (finding no adverse action because "the [ ] Circuit has held that the denial of a detail does not constitute an adverse action").

Here, the defendant argues that the plaintiff's assertion that she would have been better positioned for the permanent position had she been selected for the temporary position is speculative.[3] See Def.'s Mem. at 14. He claims that "[i]t is entirely uncertain whether service in the temporary position would have increased [the] [p]laintiff's chances to be selected for the permanent position, or any other future employment," id., and that the plaintiff has neither "produc[ed] [ ] evidence supporting [her] assertions that her ability to get into a permanent position or to move forward in her career . . . have been harmed because she was not selected for the temporary position," nor has she produced evidence that she was harmed by "the lost opportunity of not having that position listed on her resume," id. at 10 (internal quotation marks omitted).[4] And, according to the defendant, "[w]ithout some evidence that [the plaintiff] was denied [a] promotion because [s]he lacked sufficient experience[,] . . . no reasonable jury could find that [a temporary shift change] constituted the first step in a chain of events leading to . . . an adverse employment action." Id. (first, second, third, fourth, sixth, and seventh alterations in original) (footnote omitted) (quoting Achagzai v. Broad. Bd. of Governors, 308 F. Supp. 3d 396, 408 (D.D.C. 2018)). However, the defendant fails to acknowledge evidence in the record

---

[3] The defendant also argues that the plaintiff's assertion "that she was denied future opportunities . . . is too speculative." Def.'s Mem. at 1. However, the Court need not address this argument because the plaintiff is not claiming that because she was denied the opportunity to serve as the Acting Deputy Division Chief, "she actually lost an opportunity to be promoted," Def.'s Mot., Ex. I (June 14, 2018 Pretrial Conference Transcript) 12:13–14, but rather argues only that she "was denied an opportunity to be positioned or better positioned for promotional opportunities," id., Ex. I (June 14, 2018 Pretrial Conference Transcript) 12:23–25.

[4] The defendant also claims that the fact that "Tanner applied for the permanent position but was not selected, even though he served in the temporary position, evidences the speculative nature of the claim." Def.'s Mem. at 14. However, the fact that Tanner was not chosen is not dispositive of whether the Acting Deputy Division Chief position would have improved the plaintiff's chances of being selected for the permanent Deputy Division Chief position. See Kangethe, 206 F. Supp. 3d at 671 ("Although not dispositive, it also bears noting that Mr. Rodgers, who was selected for the [t]emporary . . . [p]osition in February 2014, was also not ultimately chosen for the [p]ermanent . . . [p]osition later that year." (emphasis added)).

supporting the plaintiff's position that as a result of the non-selection, she "experienced objectively tangible harm." Pl.'s Opp'n at 16. Namely, Narda Jones—the Assistant Bureau Chief who was the selecting official for the permanent Deputy Division Chief position—testified that she hired Richard Lerner and Julie Saulnier for the permanent positions of Deputy Division Chief in 2010 because, among other things, they had management skills, as opposed to the plaintiff, who Jones believed did not have those qualities. See Def.'s Mot., Ex. B (Deposition of Narda Jones (July 27, 2019)) 9:12–14; 12:11–15; 13:22–14:12. And, from this testimony, a reasonable jury could conclude that the plaintiff's non-selection for the Acting Deputy Division Chief position amounted to an adverse employment action because "the skills acquired pursuant to that [position] could have led to a promotion or permanent position." Maramark, 2006 WL 276979, at *15. Therefore, "in light of the record in this case, [the] [p]laintiff's contention that the [temporary position] represented a career-enhancing opportunity rises above the level of mere speculation." Browne, 12 F. Supp. 3d at 155 (finding that "the detail [at issue] represent[ed] not simply a temporary lateral transfer, but rather a temporary vertical transfer to a superior position"). Consequently, although the plaintiff faces a significant challenge in proving her claim of discrimination, the question of whether the plaintiff suffered an adverse action is a question that must be determined by a jury, and therefore, summary judgment is inappropriate.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that a reasonable jury could conclude that the plaintiff suffered objectively tangible harm when she was not selected for the Acting Deputy Division Chief position. Accordingly, the Court must deny the defendant's motion for summary judgment on the plaintiff's discrimination claim.

**SO ORDERED** this 12th day of September, 2019.[5]

REGGIE B. WALTON<br>
United States District Judge

---

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.