UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LINDA PINTRO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 13-231 (RBW) |
| ) | |
| JESSICA ROSENWORCEL, in her ) | |
| official capacity as Acting ) | |
| Chairwoman of the Federal ) | |
| Communications Commission, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

The plaintiff, an African-American woman of Haitian descent, brings this civil action against the defendant, Jessica Rosenworcel, in her official capacity as the Acting Chairwoman of the Federal Communications Commission ("FCC"), for allegedly discriminating against her based on her race and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-2 to -17 (2012). See Complaint ("Compl.") ¶¶ 4, 30. Currently pending before the Court is the defendant's motion in limine to exclude certain evidence at trial. See Defendant's Motion in Limine to Exclude Certain Evidence at Trial ("Def.'s Mot." or "the defendant's motion in limine"), ECF No. 138. Upon careful consideration of the parties' submissions,[1] as well as the arguments presented by the parties at the August 3, 2021 pretrial conference, see Min. Entry (Aug. 3, 2021), the Court concludes for the following reasons that it must deny the defendant's motion in limine.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiff's Opposition to Defendant's Motion[] in Limine ("Pl.'s Opp'n"), ECF No. 142; and (2) the Reply in Further Support of Defendant's Motion in Limine ("Def.'s Reply"), ECF No. 143.

I.  BACKGROUND

The Court has previously set forth the full factual and procedural background of this case in its prior Memorandum Opinions: (1) Pintro v. Wheeler ("Pintro I"), 35 F. Supp. 3d 47, 51–52 (D.D.C. 2014); (2) Pinto v. Pai ("Pintro II"), 273 F. Supp. 3d 264, 274 (D.D.C. 2017); and (3) Pintro v. Pai ("Pintro III"), Civil Action No. 13-231 (RBW), 2019 WL 4345701, at *1 (D.D.C. Sept. 12, 2019).  Accordingly, the Court will not recite this information in full again here.  The Court will, however, briefly summarize the portion of the factual background and procedural posture of this case that is pertinent to the resolution of the defendant's pending motion in limine.

A.  **Factual Background**

The plaintiff is an African-American attorney of Haitian descent who has been an FCC employee since 1996.  See Compl. ¶ 6.  During the time period relevant to this litigation, the plaintiff was a Senior Legal Advisor in the Strategic Analysis and Negotiations Division (the "Division") of the FCC's International Bureau.  See Pintro III, 2019 WL 4345701, at *1.  From approximately 2003 to 2009, she was supervised by the Chief of the Division, Kathryn O'Brien, a Caucasian.  See Compl. ¶¶ 7–8.

The plaintiff alleges that, "[b]eginning in 2003 and continuing through 2008," O'Brien "provided preferential work assignments with management designations within [the Division] to ten Caucasian attorneys, non-competitively, and deliberately excluded [the p]laintiff from these assignments and other opportunities for career advancement."[2]  Id. ¶ 9.  Specifically, she asserts

---

[2] While the plaintiff alleges that O'Brien "provided preferential work assignments with management designations within [the Division] to ten Caucasian attorneys," Compl. ¶ 9, the Complaint lists only eight individuals who were promoted, one being Dante Ibarra, a Hispanic, see id. ¶¶ 10–17.  In light of this discrepancy, for the purposes of the analysis of the defendant's motion, the Court will consider the eight promotions specifically alleged by the plaintiff in paragraphs ten through seventeen of her Complaint.  See id. ¶¶ 10–17.

that O'Brien promoted (1) Alexander Royblat, a Caucasian, to the position of Assistant Chief of the Division, effective August 24, 2003; (2) Pam Gerr, a Caucasian, to the position of Special Counsel, effective August 24, 2003; (3) Julie Barrie, a Caucasian, to the position of Deputy Chief of the Division, effective October 2003; (4) Jennifer Gilsenan, a Caucasian, to the position of Deputy Chief of the Division, effective July 16, 2004; (5) Dante Ibarra, a Hispanic, to the position of Supervisory Electronics Engineer, effective July 22, 2007; (6) Carrie Lee Early, a Caucasian, to the position of Chief of the Division's Multilateral Negotiations & Industry Analysis Branch, effective February 3, 2008; (7) Chris Murphy, a Caucasian, to the position of Branch Chief of the Division, effective November 2, 2003; and (8) Robert Tanner, a Caucasian, to the position of Acting Deputy Division Chief in March 2008. Id. ¶¶ 10–17. The plaintiff further asserts that she "was interested in and clearly better qualified" for the promotions given to Julie Barrie, Jennifer Gilsenan, and Robert Tanner, "but was overlooked for these opportunities in favor of less qualified Caucasian employees." Id. ¶ 18.

Only one of O'Brien's promotions during this time period is the basis for the claims that a jury will be tasked with resolving in this case. In early 2008, one of the Division's two Deputy Division Chief positions became vacant. See Pintro III, 2019 WL 4345701, at *1. O'Brien did not consider the plaintiff for the position, but instead asked Robert Tanner, a white person who was an attorney-advisor for the Division, to serve as an Acting Deputy Division Chief on an interim basis. See id. The plaintiff subsequently commenced this litigation, alleging that the defendant discriminated against her based on her race and national origin, and retaliated against her after she filed a complaint of discrimination with the Equal Employment Opportunity Commission, resulting in her not being selected as the Acting Deputy Division Chief. See Compl. ¶¶ 22–24.

B.      **Procedural Background**

On May 24, 2013, the defendant filed a motion to dismiss this case, arguing that the plaintiff failed to timely exhaust the administrative remedies as to her claims.  See Motion to Dismiss at 1, ECF No. 5.  Because the defendant, in her motion, relied on matters outside of the pleadings, the Court converted the defendant's motion to dismiss into one for summary judgment, see Pintro I, 35 F. Supp. 3d at 51–52, and entered summary judgment in favor of the defendant with respect to all of the plaintiff's claims, with the exception of the plaintiff's race and national origin discrimination claims based on the plaintiff's 2008 non-selection for the Acting Deputy Division Chief position that was awarded to Tanner, see id. at 56.  The Court concluded that the defendant was "not entitled to summary judgment on the plaintiff's non-selection for the Acting Deputy Division Chief position" based on the defendant's argument that the plaintiff untimely challenged her non-selection, because "a genuine factual dispute exist[ed] regarding the timing of Tanner's designation as Acting Deputy Division Chief and therefore the plaintiff's knowledge of when Tanner's designation occurred." Id. at 53.

After discovery closed on September 16, 2016, see Order at 1 (Mar. 18, 2016), ECF No. 29, the defendant filed her second motion for summary judgment, which the Court denied in Pintro II.  See Pintro II, 273 F. Supp. 3d at 274.  In Pintro II, the Court found that "a reasonable jury could conclude that the [defendant's] explanations for not selecting the plaintiff for the Acting Deputy Division Chief position were pretextual and infer that the real reason for the plaintiff's non-selection was discrimination." Id.

On May 24, 2018, the parties appeared before the Court for a pretrial conference, see Min. Entry (May 24, 2018), during which the defendant raised for the first time the argument that the plaintiff's non-selection for the Acting Deputy Division Chief position was not an

4

adverse action.  In response to this argument, the Court concluded that "whether the plaintiff suffered an adverse action is a question of fact reserved for the jury," Order at 1 (May 24, 2018), ECF No. 62, and subsequently reopened discovery regarding the selection process for the 2010 Deputy Division Chief position, see Order at 2 (June 14, 2018), ECF No. 69.  Based on this discovery, the defendant filed a third motion for summary judgment, which the Court denied in Pintro III.  See Pintro III, 2019 WL 4345701, at *2.  In Pintro III, the Court reaffirmed its prior ruling that "whether the plaintiff suffered an adverse action is a question that must be determined by a jury," and found that "a reasonable jury could conclude that the plaintiff suffered objectively tangible harm when she was not selected for the Acting Deputy Division Chief position." Id. at *5–6.

On June 4, 2021, the defendant filed her motion in limine "to exclude from trial evidence about claims and allegations where the Court has already held [that the plaintiff] failed to exhaust [ ] administrative remedies."  Def.'s Mot. at 1.  Specifically, the defendant seeks to exclude evidence about the plaintiff's alleged "series of non-selections from 2003 through 2008[,] . . . [w]ith the exception of the [ ] 2008 selection of [ ] Tanner as Acting Deputy Division Chief [('the prior non-selections')]" id. at 3, as this Court has already entered summary judgment in favor of the defendant with respect to the prior non-selections, and the plaintiff's remaining race and national origin discrimination claims are only based on the plaintiff's 2008 non-selection for the Acting Deputy Division Chief Position, see Pintro I, 35 F. Supp. 3d at 56. On August 3, 2021, the parties appeared before the Court for a pretrial conference and a hearing on the defendant's motion in limine, which is the subject of this Memorandum Opinion.  A jury trial in this matter is scheduled to commence on August 18, 2021.  See Order at 1 (Nov. 17, 2020), ECF No. 134.

## II. STANDARD OF REVIEW

Although "[n]either the Federal Rules of Civil Procedure nor the Federal Rules of Evidence expressly contemplate motions in limine, the practice of allowing such motions has developed over time 'pursuant to the district court's inherent authority to manage the course of trials.'" Youssef v. Lynch, 144 F. Supp. 3d 70, 80 (D.D.C. 2015) (quoting Luce v. United States, 469 U.S. 38, 41 n.4 (1984)). "Consistent with the historical origins of the practice, motions in limine are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" Youssef, 144 F. Supp. 3d at 80 (quoting Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1070 (3d Cir. 1990)).

> Broadly speaking, the Federal Rules of Evidence permit the admission of "relevant evidence"—that is, evidence that 'has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence,' Fed. R. Evid. 401—provided it is not otherwise excluded by the Rules, the Constitution of the United States, or an Act of Congress, Fed. R. Evid. 402, and its probative value is not "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Youssef, 144 F. Supp. 3d at 80.

"In deference to their familiarity with the details of the case and greater experience in evidentiary matters, trial judges are afforded broad discretion in rendering evidentiary rulings, a discretion which extends to assessing the probative value of the proffered evidence and weighing any factors against admissibility." Id. (citing Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)). "The trial judge's discretion extends not only to the substantive evidentiary ruling, but also to the threshold question of whether a motion in limine presents an evidentiary issue that is appropriate for ruling in advance of trial." Id. (citing United States v. Valencia, 826 F.2d 169, 172 (2d Cir. 1987)).

### III.     ANALYSIS

In the defendant's motion in limine, she argues that "[the p]laintiff should be precluded from introducing evidence about the previous selection decisions for which the Court has already entered summary judgment in [the d]efendant's favor." Def.'s Mot. at 3. In support of her motion, the defendant argues that: (1) "[the p]laintiff's claims about earlier non-selections are not currently before the Court[,]" due to the plaintiff's failure to exhaust [ ] administrative remedies, "[a]nd as such, they are not relevant" under Federal Rule of Evidence 401, id.; (2) although "there are limited circumstances when prior discriminatory conduct may be admissible under [Federal Rule of Evidence] 404(b) to prove motive or intent[,]" the plaintiff has not made a sufficient "proffer that the evidence is indicative on its face of discriminatory animus or other misconduct" to warrant admitting the evidence under this rule, id. at 4; and (3) "any probative value [this evidence] may have is substantially outweighed by the danger of unfair prejudice to the [d]efendant[,]" id. at 5.

In response, the plaintiff argues the defendant's "motion is without merit and should be denied." Pl.'s Opp'n at 1. At the August 3, 2021 pretrial conference, the plaintiff further argued that evidence about O'Brien's selection decisions from 2003 to 2008 is admissible for the purpose of demonstrating her discriminatory motive and intent, as her selection decisions during this time period reveal a history of noncompetitively promoting Caucasian employees.

For the following reasons, the Court disagrees with the defendant and concludes that the plaintiff may introduce at the trial evidence regarding the prior non-selections from 2003 to 2008, solely for the purpose of demonstrating that O'Brien acted with discriminatory motive or intent in selecting Tanner, rather than the plaintiff, for the 2008 Acting Deputy Division Chief position that is at issue in this case. The Court will address the defendant's arguments in turn.

A.      **Relevance Under Federal Rule of Evidence 401**

First, the Court addresses the defendant's assertion that the plaintiff's prior non-selections are not relevant under Federal Rules of Evidence 401, because "the Court entered summary judgment in [the d]efendant's favor on each of these claims due to [the p]laintiff's failure to exhaust [ ] administrative remedies." Def.'s Mot. at 2. As a preliminary matter, the Court notes that the mere fact that the plaintiff did not exhaust administrative remedies as to these prior selection decisions does not preclude her "from using the [allegedly discriminatory] prior acts as background evidence in support of a timely claim." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). "[T]here has been a growing consensus in which courts have allowed parties to introduce—as background evidence—factual allegations that support time-barred claims insofar as they bear upon timely claims." Pleasants v. Allbaugh, 285 F. Supp. 2d 53, 55 (D.D.C. 2003) (collecting cases); see, e.g., Stewart v. Rutgers, 120 F.3d 426 (3d Cir. 1997) (noting that, "[w]hile the district court was correct in finding that any discrimination claim based on [the plaintiff's] 1992[ to 19]93 tenure denial is time-barred, [it] reject[ed] the notion that the events surrounding that denial [were] not relevant evidence which [the plaintiff] could use at trial"). Therefore, although the plaintiff's claims regarding her prior non-selections from 2003 to 2008 "are not independently actionable," evidence regarding these non-selections "is relevant and admissible insofar as it bears on her claim that she was discriminatorily refused" the Acting Deputy Division Chief position in early 2008. Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1192 (9th Cir. 2003).

Here, the plaintiff seeks to admit evidence of her prior non-selections from 2003 to 2008 to demonstrate O'Brien's discriminatory motive and intent, under the theory that her selection decisions during this time reveal a history of noncompetitively promoting Caucasian employees.

8

While the defendant is correct that the plaintiff's prior non-selections are not directly at issue in this litigation, see Def.'s Mot. at 3, this evidence is nonetheless relevant as to a disputed element of the plaintiff's remaining claim, i.e., whether her 2008 non-selection occurred under circumstances giving rise to an inference of discrimination. See Pintro II, 273 F. Supp. 3d at 274 (denying the defendant's motion for summary judgment, and finding "that a reasonable jury could conclude that the [defendant's] explanations for not selecting the plaintiff for the Acting Deputy Division Chief position were pretextual and infer that the real reason for the plaintiff's non-selection was discrimination."). A jury could reasonably draw the inference that, to the extent O'Brien's decisions over a five-year period constituted a pattern of promoting only Caucasian employees, this information could be construed as showing that her decisions were based on inappropriate discriminatory factors, rather than merit. See Jones v. Wash. Metro. Area Transit Auth., 946 F. Supp. 1011, 1019 (D.D.C. 1996) ("The court holds that, at a minimum, evidence of prior discriminatory acts are relevant to [the defendant's] motive and intent."); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 793 (1973) (remanding case to allow the employee "a fair opportunity of proving that [the employer's] stated reason was just a pretext for a racially discriminatory decision," and noting that "[o]ther evidence that may be relevant . . . could include facts [demonstrating] that . . . [the employer] followed a discriminatory policy toward [m]inority employees"). Therefore, the Court concludes that this evidence "has [a] tendency to make a fact [of consequence,] more or less probable than it would be without the evidence[,]" Youssef, 144 F. Supp. 3d at 80 (citing Fed. R. Evid. 401), and therefore this evidence is relevant to the issue of O'Brien's discriminatory motive or intent.

**B.     Admissibility to Prove Motive or Intent Under Federal Rule of Evidence 404(b)**

Next, the Court addresses whether the plaintiff's non-selections from 2003 to 2008 are admissible to show motive or intent under Federal Rule of Evidence 404(b). Although the defendant acknowledges that "there are limited circumstances when prior discriminatory conduct may be admissible under [Federal Rule of Evidence] 404(b) to prove motive or intent[,]" she contends that the plaintiff has not made a sufficient "proffer that the evidence is indicative on its face of discriminatory animus or other misconduct" to warrant admitting the evidence in this case. Def.'s Mot. at 4.

Pursuant to Federal Rule of Evidence 404(b), "[e]vidence of other 'bad acts' is never admissible simply to establish a propensity to engage in similar acts." White v. U.S. Cath. Conf., No. CIV.A.97-1253 TAF/JMF, 1998 WL 429842, at *5 (D.D.C. May 22, 1998) (citing Fed. R. Evid. 404(b)); see Fed. R. Evid. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). Federal Rule of Evidence 404(b) also provides, however, that "evidence of other acts of discrimination similar to the discrimination charged may be admitted to show motive or intent, provided the relevance of the evidence outweighs its tendency to prejudice the opponent of the evidence unfairly, pursuant to Federal Rule[] of Evidence 403[.]"[3] Williams v. Johanns, 245 F.R.D. 10, 13 (D.D.C. 2007), aff'd, 563 F. Supp. 2d 27 (D.D.C. 2008).

---

[3] Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Court will address the issue of whether the evidence should be excluded pursuant to Federal Rule of Evidence 403 in the following section of this Memorandum Opinion. See infra Section III.C.

10

"Although Rule 404(b) allows evidence of other acts of [discrimination and] retaliation to show motive or intent, the proffered evidence must meet a threshold level of similarity." Bell v. Gonzales, Civil Action No. 03-163, 2005 WL 3555490, at *2 (D.D.C. Dec. 23, 2005); see Coles v. Perry, 217 F.R.D. 1, 9 (D.D.C. 2003) ("other acts of discrimination, similar to the discrimination charged, perpetrated by a person accused of the same discrimination in the case on trial are admissible to prove motive and intent"). "[O]nly discrimination . . . of the same character and type as that is alleged is probative." White, 1998 WL 429842, at *5. "To establish that a prior discriminatory act is probative of the intention or motive of the defendant, there must be some reason to believe that h[er] motivation or intention in the acts in question was similar to h[er] motivation or intention on the prior occasion." Id.

Here, "[t]he character and type of the [discrimination]" alleged in the plaintiff's prior non-selections "is similar and close in time to the [discrimination] alleged by the plaintiff in several respects." Bell, 2005 WL 3555490, at *2. First, O'Brien was the same decision-maker who failed to select the plaintiff during the period of 2003 to 2008, including the plaintiff's 2008 non-selection that is at issue in this case. See Compl. ¶¶ 7–8. Second, the nature of the other positions for which the plaintiff was not selected were similar in nature to the 2008 Acting Deputy Division Chief position at issue in this trial. Specifically, as to all of plaintiff's non-selections, O'Brien allegedly "provided preferential work assignments with management designations within [the Division,]" Compl. ¶ 9, and, according to the plaintiff, these promotions all afforded the selectees an opportunity to exercise supervisory responsibilities, see id. ¶¶ 10–17 (listing positions such as Deputy Chief of the Division, Assistant Chief of the Division, Branch Chief of the Division, and other supervisory positions). Third, these prior non-selections occurred in relatively close temporal proximity to the plaintiff's 2008 non-selection, as the prior

11

non-selections occurred within the preceding five years. Cf. Williams, 245 F.R.D. at 13 (limiting discovery of similar discriminatory practices "to a [ ] reasonable time period of the preceding five years[,]" to enable the plaintiffs to "establish a pattern of discrimination" and "support a showing of intent"). Fourth and finally, the plaintiff alleges that, for each of the non-selections, "the preferential work assignments" were awarded to "Caucasian attorneys, non-competitively[.]" Compl. ¶ 9.

Based on these alleged facts and allegations, the Court finds that the plaintiff's purported acts of discrimination in the prior non-selections are "sufficiently similar to the [discrimination] alleged by the plaintiff to make it, at least at first glance, probative of [O'Brien's] state of mind" about employees who belong to the plaintiff's protected class. Bell v. Gonzales, 2005 WL 3555490, at *2. Therefore, the Court concludes that the plaintiff's prior non-selections from 2003 to 2008 are admissible for the purpose of proving O'Brien's motive and intent regarding the plaintiff's 2008 non-selection, pursuant to Federal Rule of Evidence 404(b).

The defendant's counterargument is unconvincing. While the defendant acknowledges that "there are limited circumstances when prior discriminatory conduct may be admissible under [Federal Rule of Evidence] 404(b) to prove motive or intent[,]" she asserts that, "[a]s part of that inquiry, the plaintiff should make some proffer that the evidence actually is indicative on its face of discriminatory animus or other misconduct for the evidence to be admitted." Def.'s Mot. at 4. And the defendant contends that, in this case, "[the p]laintiff has not identified any record evidence to suggest that these earlier selection decisions were improper or discriminatory" and "[i]nstead, [the p]laintiff relies exclusively on her own speculation." Id.

This argument fails for two reasons. First, the Court has been unable to locate any authority that supports the defendant's argument that the plaintiff "should make some proffer

12

that the evidence actually is indicative on its face of discriminatory animus or other misconduct for the evidence to be admitted." Def's Mot. at 4. The defendant cites Henry v. Wyeth Pharmaceuticals, 616 F.3d 134, 150 (2d Cir. 2020), where the Second Circuit concluded that "the relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class."[4] Def's Mot. at 4 (quoting Wyeth Pharms., 616 F.3d at 150). In Wyeth, however, the Second Circuit did not adopt a rule that, to be admissible, a prior discriminatory act must be indicative on its face of discriminatory animus. Rather, the Second Circuit simply applied the relevancy standard of Federal Rule of Evidence 401, see Fed. R. Evid. 401 ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence[.]"), to discrimination-related remarks, in concluding that such remarks are relevant where they "tend[] to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class." Wyeth Pharms., 616 F.3d at 150 (quoting Tomassi v. Insignia Financial Group, Inc., 478 F.3d 111, 116 (2d Cir. 2007)).[5]

---

[4] Although the defendant attributes this quote directly to Wyeth Pharmaceuticals, see Def.'s Mot. at 4, the quote originates from Tomassi v. Insignia Finanial Group, Inc., 478 F.3d 111, 116 (2d Cir. 2007). Tomassi also fails to support the defendant's position that the plaintiff "should make some proffer that the evidence actually is indicative on its face of discriminatory animus or other misconduct for the evidence to be admitted[,]" Def's Mot. at 4. In Tomassi, the Second Circuit concluded that "[t]he district court was [ ] mistaken in the view that the probative value of [a supervisor's] remarks depended on how offensive they were[,]" because even "[i]noffensive remarks may strongly suggest that discrimination motivated a particular employment action." 478 F.3d at 116. And, like the Wyeth court, the Tomassi court concluded that that discrimination-related remarks are relevant where they "tend[] to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class." Id.

[5] To the extent that the plaintiff is required to make a proffer that the evidence regarding her prior non-selections "tend[s] to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class[,]" Tomassi, 478 F.3d at 116, the Court notes that the plaintiff has done so in response to the defendant's summary judgment motion that the Court previously denied in Pintro II, see 273 F. Supp. 3d at 274. As the plaintiff correctly noted during the August 3, 2021 pretrial conference, the plaintiff has previously identified record evidence to suggest that O'Brien might have been motivated by factors other than merit in making her selection decision for the 2008 Acting Deputy Division Chief position. In fact, in Pintro II, the Court found that "a reasonable jury could conclude that the [defendant's] explanations for not selecting the plaintiff for the Acting Deputy Division Chief position were pretextual and infer that the real reason for the plaintiff's non-selection was discrimination." Id. For example, in Pintro II, the plaintiff argued that, although O'Brien represented that she did not consider the plaintiff

(continued . . .)

13

Second, the defendant's position does not account for the realities of discrimination in the workplace or in any other setting. The Court notes that, when an individual discriminates against an employee of a different race, national origin, or any other basis, it is highly unlikely that the individual will make an overt statement facially demonstrating discriminatory intent or motive. See Busbee v. Smith, 549 F. Supp. 494, 516–17 (D.D.C. 1982), aff'd, 459 U.S. 1166 (1983) (noting that "[o]vert racial statements . . . provide only one basis for finding discriminatory intent[,]" and "[f]requently the most probative evidence of intent will be objective evidence of what actually happened rather than evidence describing the subjective state of mind of the actor" (internal quotation marks and citations omitted)). Thus, even where a plaintiff lacks direct evidence of discriminatory intent, discriminatory intent can still be discerned through circumstantial evidence, such as the employer's policies and/or practices that have been implemented over a period of time. See Allen v. Johnson, 795 F.3d 34, 40 (D.C. Cir. 2015) ("[C]ommon ways of proving invidious motive—whether retaliation or discrimination—include pointing to evidence that the employer treated other, similarly situated employees better . . . or that the employer's general treatment of minority employees . . . was worse than its treatment of non-minorities[.]" (internal quotation marks omitted)); Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1295 (D.C. Cir. 1998) (noting that a plaintiff can "prevail at trial[] by presenting other

---

(. . . continued)
for the 2008 Acting Deputy Chief position because of "alleged interpersonal difficulties[,]" these alleged interpersonal difficulties were pretextual. Id. at 272–73. This Court "agree[d] with the plaintiff that not only is there no contemporaneous evidence documenting the plaintiff's supposed interpersonal difficulties, but that the contemporaneous evidence actually demonstrates the contrary." Id. at 273; see id. (noting that "the performance awards the plaintiff received in 2005 through 2008 commended her for her 'strong legal and professional skills,' her ability to 'address a tremendous number of consumer complaints in an extremely compressed time span,' her 'long hours and successful[] complet[ion of] her assigned number of applications within the established deadlines,' and her 'commendable' 'work on [a] fast paced and complex project'" (alterations in original) (citations omitted)). Because O'Brien was the same decision-maker for the plaintiff's prior non-selections from 2003 to 2008, see Compl. ¶¶ 7–8, the evidence that the plaintiff proffered regarding her 2008 non-selection arguably undermines the defendant's assertion that O'Brien's promotion decisions during the prior five-year period were not similarly tainted by an improper motive or intent.

evidence, either direct or circumstantial, that permits an inference of discrimination[,]" such as, "evidence that the defendant employs [members of a protected class] at rates far below their numbers in the applicant pool and the general population").

### C.      Risk of Unfair Prejudice Under Federal Rule of Evidence 403

Lastly, the Court considers the defendant's argument that, even if the evidence of the plaintiff's prior non-selections from 2003 to 2008 is relevant and admissible under Federal Rule of 404(b), the probative value of this evidence "is substantially outweighed by the danger of unfair prejudice to the [d]efendant[,]" under Federal Rule of Evidence 403.  Def.'s Mot at 4–5. Specifically, the defendant contends that admitting this evidence "would confuse the jury" and "create the risk that the jury would hold [the d]efendant liable, or award damages to [the p]laintiff, on a claim that has been dismissed[.]"  Id.

Pursuant to Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Despite the defendant's concerns, the Court concludes that any risk of prejudice that the defendant might suffer does not substantially outweigh the probative value of the plaintiff's prior non-selections.  As an initial matter, the Court agrees with the following point raised by the defendant at the August 3, 2021 pretrial conference: the mere fact that only Caucasian employees were selected for these prior positions does not prove, in and of itself, that the plaintiff's 2008 non-selection was the result of discriminatory motive or intent.  However, as the Court concludes above, see supra Section III.B, this evidence is nonetheless probative of O'Brien's motive or intent.  Moreover, any risk of prejudice from the introduction of the prior non-selections can be

15

sufficiently mitigated through "a limiting instruction so that the jury understands that evidence of prior, time-barred acts is for background information only and is not evidence of separate, actionable claims."[6]  Pleasants, 285 F. Supp. 2d at 55.  Additionally, the defendant would be entitled to present evidence regarding the qualifications of the individuals who were ultimately selected for these prior positions, to undermine the plaintiff's suggestion that these decisions were not predicated on the merits of the individual candidates.  Therefore, the Court concludes that any risk of prejudice does not substantially outweigh the probative value of the evidence.

The defendant also argues that admitting evidence of the plaintiff's prior non-selections "would require the upcoming trial to devolve into several mini-trials about each of these previous selection decisions."  Def.'s Mot. at 5.  However, this argument is insufficient to prohibit the plaintiff from presenting relevant evidence in support of her claim.  See Miller v. Poretsky, 595 F.2d 780 (D.C. Cir. 1978) ("past acts of racial discrimination [are] relevant to prove [the defendant's] motive in his actions towards [a different complainant]," notwithstanding "the risk of time-consuming collateral inquiries").  On balance, the Court concludes that the probative value of the plaintiff's prior non-selections regarding the issue of O'Brien's motive or intent is not substantially outweighed by a risk of unfair prejudice.  Therefore, the plaintiff will be permitted to introduce evidence regarding the prior non-selections during the trial in this case.

---

[6] Although the defendant contends that admitting evidence of the plaintiff's prior non-selections "would create the risk that the jury would hold [the d]efendant liable, or award damages to [the p]laintiff, on a claim that has been dismissed[,]" Def.'s Mot. at 5, and therefore unduly prejudice the defendant, this argument is not convincing because these claims were not dismissed on the merits—which, if that was the case, would pose a greater risk of prejudice—but rather, on procedural grounds, see Pintro I, 35 F. Supp. 3d at 53 ("With respect to the remaining acts forming the basis of the plaintiff's race and national origin discrimination claims, however, the Court finds that the plaintiff did not timely exhaust her administrative remedies.").  Again, however, the Court notes that any risk of prejudice can be sufficiently addressed with a limiting instruction.  See Fed. R. Evid. 403, Notes of Advisory Committee on Proposed Rules ("In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction.").

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must deny the defendant's motion in limine.  At trial, the plaintiff may introduce evidence of her prior non-selections from 2003 to 2008, solely for the purpose of demonstrating that O'Brien acted with discriminatory motive or intent in selecting Tanner, rather than the plaintiff, for the 2008 Acting Deputy Division Chief position that is at issue in this case.

**SO ORDERED** this 16th day of August 2021.[7]

REGGIE B. WALTON<br>United States District Judge

---

[7] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.